```
          IN THE UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF NEBRASKA

UNITED STATES OF AMERICA,      )
                               )
            Plaintiff,         )         4:08CR3005
                               )
      v.                       )
                               )
JEREMY HORTON,                 )    REPORT AND RECOMMENDATION
                               )
            Defendant.         )
                               )
```

The defendant has filed a motion to suppress his responses to an interrogation conducted by law enforcement officers Colleen Busch, a criminal investigator for Alliance Police Department, and Department of Homeland Security Special Agent John Ferreira following defendant's arrest on December 18, 2007.  Filing No. 26.  The defendant claims the officers violated his Miranda rights and his statements were involuntary and therefore inadmissible under the Fifth Amendment.  For the reasons discussed below, I find the motion to suppress should be granted.

                      STATEMENT OF FACTS

     The defendant was arrested pursuant to a warrant on December 18, 2007.  The arrest occurred at approximately 4:00 p.m. in the parking lot of the Days Inn Motel located in Alliance, Nebraska.  The defendant was handcuffed, transported to the Alliance Police Department, and escorted to that department's interview room.  The defendant's handcuffs were removed once he arrived in the interview room.

The Alliance Police Department interview room is approximately fourteen-by-fourteen feet, and on December 18, 2007, was equipped with three chairs to accommodate the defendant and the officers who intended to interview him, Investigator Busch and Special Agent Ferreira.  The room had no other furniture and no windows.  The interview room was equipped with a two-way mirror and a system for producing audio cassette recordings of victim interviews and suspect interrogations.  The microphones for the recording system were not visible, and the recording equipment was located in an adjacent office.

When the defendant entered the interview room, Investigator Busch started the recording equipment.  The defendant conversed with and was questioned by Investigator Busch and Special Agent Ferreira for approximately two and one-half hours on December 18, 2007.  The content of this dialogue was recorded on two cassette tapes.  See exs. 1 & 2.

During the course of defendant's interrogation, the interview room was not locked, but officers were present in adjacent offices within the Alliance Police Department, and the defendant was not free to leave.  The defendant was under arrest and in police custody during the entire course of his interrogation on December 18, 2007.

Investigator Busch and Special Agent Ferreira were both dressed in plain clothes, and both were carrying weapons.  The officers' weapons were not visible or drawn during their contact with the defendant on December 18, 2007.  The officers were positioned approximately three feet from each other and from the

defendant during questioning.

Before any questioning began, the officers introduced themselves and showed the defendant a copy of his arrest warrant. The defendant was told he was arrested for possession of child pornography, and that such images were found in his Days Inn Motel room by the cleaning staff. When the defendant denied having any knowledge of the images, Special Agent Ferreira expressed his surprise to hear the defendant say that, and stated that if the defendant did not do anything wrong, the officer was confident the defendant would be willing to answer the officers' questions. Ex. 1, side 1 at 3.0-4.0.

Special Agent Ferreira then verbally advised the defendant of his Miranda rights. The defendant acknowledged he understood his rights. Ex. 1, side 1 at 4.1-4.6. The following dialogue then ensued:

> SA Ferreira: Are you willing to waive these rights and talk to me right now?
>
> Defendant: No, I'm not. Not that I don't trust you. I just (pause)
>
> SA Ferreira: Jeremy, I'm not asking you to trust me. I'm asking you to talk to me. You know, we've got a warrant for your arrest here. Um, I'm trying to give you, provide you with an opportunity. There's always two sides to every story, kay? We know our side of the story, okay? The only side of the story that we don't know is yours, and if you're not willing to talk to us, we're never going to know that side of your story.

3

Defendant:       Well, you have to issue a warrant indiscernable). . .

SA Ferreira:     Let me finish, Bud, let me finish. This is one of those situations where, Jeremy wasn't being honest with me, okay?. . . . This isn't the movies man, where we're going to shine a light on you, and there's going to be some big guys coming in here and threatening ya, . . . This is the real world, man, alright? This is the real world. The situation is is that, with or without you telling me the truth. . ., this is the way we have to handle it because . . .

Defendant:       I understand.

SA Ferreira:     . . . Like I said, Jeremy, we're just trying to provide you with an opportunity. Colleen and I are available. I mean, it's late, but we, we come around because we understand that there's two sides to every story and we're trying to provide an opportunity for you to give us your side of the story.

Defendant:       Uh, what kind of questions are you going to ask?

SA Ferreira:     . . . I'm going to read you your rights. I'm going to ask some questions, okay? I've got some written down. Colleen has some questions, okay? If at any time you don't want to answer a question, say I'm not going to answer that question. If at any time you want to discontin. . . (interrupted by defendant)

Defendant:       If I waive my rights, and you ask questions and I don't want to answer it, will that be held against me?

SA Ferreira:     Well, what do you mean held against you?

Defendant:       Well, I just get nervous when people are asking questions and stuff.

4

>     SA Ferreira:    (Inaudible)  Jeremy, the only thing that
>                     you're facing is these charges.  Even if I
>                     have a vendetta against you, or somebody
>                     (inaudible) had a vendetta against you, that
>                     doesn't mean anything . . . in a court of
>                     law.  If you choose not to answer a question,
>                     that's your rights.  I mean, you have the
>                     right right now to have us walk out of here,
>                     and book you in jail, and just be done.  Like
>                     I said . . . our purpose here is to provide
>                     you with an opportunity to tell us your side
>                     of the story.
>
>     Defendant:      I'll tell you my side of the story.  I'll
>                     waive my rights (inaudible) have a glass of
>                     water or something.

Ex. 1, side 1 at 4.6-6.8.  Special Agent Ferreira began to read the <u>Miranda</u> rights again, but was interrupted when the defendant asked, "What if I want to reinstate my rights.  Can I do that?"  Special Agent Ferreira responded, "Yes.  You can say, 'I'm done talking to you. I want a lawyer.'  I want you to understand that."  Ex. 1, side 1 at 6.9-7.1.

   Starting at the beginning, Special Agent Ferreira again read the <u>Miranda</u> rights to the defendant and asked if the defendant understood the rights.  The defendant responded, "Yes, I do."  Special Agent Ferreira asked, "Are you willing to waive these rights and talk to me?"  The defendant responded, "At this time I am."  Ex. 1, side 1 at 7.1-7.3.  After the defendant drank some water, the interrogation began.

   From the outset and throughout the course of defendant's questioning, the defendant did not appear to be under the influence of any drug or alcohol, and no odor of alcohol was detected.  The defendant did not appear nervous or tired, and

provided responses appropriate to the questions asked. When initially asked, he refused to provide the password for his email account. Ex. 1, side 1 at 21.7-21.8. The officers never demanded an answer to this question, or any other question presented during the interrogation. Approximately an hour and a half after the interview began, the defendant was permitted to take a break, smoke a cigarette, and drink a Mountain Dew. Ex. 2, side 1, at 8.0 to 12.4. No questioning occurred during this break. The defendant was not threatened or manhandled by the officers, and was not promised anything to elicit his cooperation.

## DISCUSSION

A criminal suspect in custody must be informed of his right to remain silent and to have counsel appointed before being interrogated. Miranda v. Arizona, 384 U.S. 436, 472, 479 (1966). An accused person in custody who has "expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." Edwards v. Arizona, 451 U.S. 477, 484 (1981).

The protections afforded under Miranda and Edwards are available only if the accused unequivocally asserts the right to consult with counsel before being questioned. The accused must articulate a "desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." Davis

6

v. U.S., 512 U.S. 452, 459 (1994). However, "[w]here nothing about the request for counsel or the circumstances leading up to the request would render it ambiguous, all questioning must cease." Smith v. Illinois, 469 U.S. 91, 98 (1984). "[A]n accused's postrequest responses to further interrogation may not be used to cast retrospective doubt on the clarity of the initial request itself. Such subsequent statements are relevant only to the distinct question of waiver." Smith v. Illinois, 469 U.S. at 100.

If after invoking the right to counsel, a suspect initiates an encounter with law enforcement, such conduct may be considered a waiver of the right to counsel. However, a valid waiver cannot be established by showing only that the defendant responded to further police-initiated custodial interrogation after being advised of his rights. Edwards v. Arizona, 451 U.S. at 484. Rather, the government must prove the accused himself initiated further communication, exchanges, or conversations with the police, and that the defendant knowingly, intelligently, and voluntarily waived his right to counsel. The court must consider the totality of the circumstances when determining the validity of defendant's alleged waiver. Oregon v. Bradshaw, 462 U.S. 1039, 1044 (1983).

Based on the foregoing authorities, to determine whether the defendant Horton's Miranda rights were violated, the court must first decide whether the defendant clearly invoked his right to counsel. If the defendant did invoke his right to have counsel during questioning, the prosecution has the "burden of proving [the defendant] 'evinced a willingness and a desire for a

generalized discussion about the investigation,' . . . and if so, whether or not he made a knowing and intelligent waiver of his rights to remain silent and have counsel present." Lamp v. Farrier, 763 F.2d at 997-98 (8th Cir. 1985) (quoting Oregon v. Bradshaw, 462 U.S. at 1045).

    1.    Refusal to waive Miranda rights-invoking the right to counsel.

After reading Miranda rights to the defendant, Special Agent Ferreira asked, "Are you willing to waive these rights and talk to me right now?" The defendant responded, "No, I'm not. Not that I don't trust you. I just . . ." The defendant paused and said no more until after the Special Agent Ferreira advised the defendant that trust was not the issue, and stated that the officer was affording the defendant the opportunity to explain defendant's side of the story because, "if you're not willing to talk to us, we're never going to know that side of your story."

"No, I'm not," is not an ambiguous statement, and nothing said or occurring prior to that statement rendered defendant's refusal to waive his rights ambiguous. Further, the defendant's explanatory statement, "It's not that I don't trust you," cannot reasonably be interpreted as equivocating from the clear import of the defendant's response, "No, I'm not," when asked if he was willing to waive his Miranda rights and respond to interrogation without the assistance of counsel. See e.g., Smith v. Illinois 469 U.S. at 93 (holding the defendant clearly invoked his right to counsel by saying "Yeah. I'd like to do that" after being advised of his right to consult with a lawyer and have a lawyer

8

present during questioning); U.S. v. Johnson, 400 F.3d 187, 196 (4th Cir. 2005)(holding defendant's written "no" on a form asking "Do you want to make a statement at this time without a lawyer?" was an unambiguous refusal to waive the right to counsel during questioning).  Although Special Agent Ferreira eventually elicited a statement indicating defendant was willing to waive his rights "[t]o say that a person must clearly and consistently assert his desire to remain silent . . . does not mean that he must repeat his clearly asserted desire to remain silent in order to halt continued questioning." Simmons v. Bowersox, 235 F.3d 1124, 1131 n. 3 (8th Cir. 2001)(citing Smith v. Illinois, 469 U.S. at 97-99).

> 2. "Initiating" discussion after refusal to waive Miranda rights.

After the defendant invoked his right to counsel, Special Agent Ferreira advised the defendant that allowing the officers to question the defendant on the night on December 18, 2007, while both Special Agent Ferreira and Investigator Busch were available, would grant the defendant an opportunity to explain his side of the story.  The defendant ultimately stated he agreed to be interviewed without counsel.

Miranda and Edwards are procedural and prophylactic standards adopted by the United States Supreme Court "to safeguard the Fifth Amendment privilege against self-incrimination." Michigan v. Harvey, 494 U.S. 344, 350 (1990).  Miranda required officers to advise suspects of their rights before interrogation.  Edwards created an additional safeguard "designed to prevent police from badgering a defendant

9

into waiving his previously asserted Miranda rights" by requiring officers to cease discussions except upon the defendant's initiation once Miranda rights have been invoked. Michigan v. Harvey, 494 U.S. at 350. Generally, for the purposes of Edwards, an accused does not "initiate" a conversation by making statements or inquiries relating to the "routine incidents of the custodial relationship," such as asking for a drink of water or to use the phone. Oregon v. Bradshaw, 462 U.S. at 1045. However, asking officers to explain what is going to happen evinces "a willingness and a desire for a generalized discussion about the investigation" that can reasonably be interpreted as initiating communications with the police. Oregon v. Bradshaw, 462 U.S. at 1045-1046. "[T]he communication initiated by the accused satisfies Edwards only if it relates to the investigation." U.S. v. Valdez, 146 F.3d 547, 551 (8th Cir. 1998).

Mere seconds passed between defendant's statement, "No, I'm not" willing to waive Miranda rights, and the officer's explanation of why the defendant should, with the only intervening words by the defendant being "It's not that I don't trust you. I just (silence)." This phrase cannot reasonably be interpreted as expressing a desire to discuss the investigation itself. Rather, it more likely evinces defendant's reluctance, possibly based on fear, to talk with the officers or answer their questions. As interpreted under Edwards, the defendant did not "initiate" a conversation after invoking his Miranda rights. Special Agent Ferreira initiated the discussion, the apparent purpose of which was to persuade the defendant to waive his Miranda rights, again advised the defendant of his rights, and

then successfully elicited defendant's statement waiving those rights.

While the defendant's ultimate waiver may have been voluntary and knowing, as discussed below, it arose from a violation of the prophylactic requirements of Edwards. The defendant's statements in response to interrogation conducted by Special Agent Ferreira and Investigator Busch on December 18, 2007 should be suppressed. U.S. v. Johnson, 812 F.2d 1329, 1331 (11th Cir. 1986)(holding Edwards was violated when, after the defendant asked for a lawyer, the officer initiated a discussion concerning why cooperation may be beneficial for the defendant, culminating in defendant providing a statement); Anderson v. Smith, 751 F.2d 96, 98 (2d Cir. 1984)(holding Edwards was violated where the defendant was read his rights, responded "No" when asked if he would waive those rights, and after the officer responded "Why?" and explained the defendant was being afforded an opportunity to talk for himself, the defendant agreed to answer questions); State v. Langlands, 276 Ga. 721, 583 S.E.2d 18 (2003) (suppressing defendant's statement under Edwards when, after defendant invoked right to counsel, the officer explained he needed to hear the defendant's side of the story, and the defendant provided a statement); State v. Hannon, 636 N.W.2d 796 (Minn. 2001)(suppressing defendant's statement under Edwards where the defendant refused to waive his Miranda rights, the defendant did not initiate any discussion, the police declared that if defendant wanted to talk to attorney first his "side of [the] story [would] never be known"), and the defendant then provided statement).

   3.   Voluntary and knowing waiver of Fifth Amendment right
        to silence.

At the time of the hearing, the defendant orally moved to amend his motion and further claim his statement was the product of coercion. The court need not consider this argument if the statement must be suppressed under Edwards. However, this is a report and recommendation. The defendant's alternative voluntariness argument will therefore be discussed to fully apprise the trial judge of the issues raised on defendant's motion to suppress and to address, in advance, an argument the defendant may later raise if he is subject to cross-examination at trial.

   The defendant provided a statement after being advised of his Miranda rights a second time and asking specific questions concerning whether he could refuse to answer certain questions or refuse to further cooperate with the interview after initially waiving his rights. The government bears the burden of proving by a preponderance of the evidence that the defendant's waiver of his Miranda rights was an intentional, voluntary, knowing, and intelligent relinquishment or abandonment of a known right or privilege. United States v. Black Bear, 422 F.3d 658 (8th Cir. 2005). A waiver is "knowing and intelligent" if it is made with full awareness of both the nature of the right being abandoned and the consequences of abandoning the right. A waiver is "voluntary" if it was a product of the suspect's free and deliberate choice, and not the product of intimidation, coercion, or deception. Thai v. Mapes, 412 F.3d 970, 977 (8th Cir. 2005).

The ultimate question is whether the defendant's will to remain silent was overborne and his capacity for self-determination critically impaired. United States v. Santos-Garcia, 313 F.3d 1073, 1079 (8th Cir. 2002). In reaching this decision, the court should consider the suspect's age, general intelligence and education; whether he was intoxicated or under the influence of drugs when consenting; whether he consented after being informed of his right to withhold consent or of his Miranda rights; and whether, because he had been previously arrested, he was aware of the protections afforded to suspected criminals by the legal system. U.S. v. Griffith, 533 F.3d 979, 984 (8th Cir. 2008).

The defendant is an English-speaking adult who appeared alert and not under the influence of any drugs or alcohol when advised of his Miranda rights. He responded appropriately to the officers' questions, and initially refused to answer a question asking for the password on his email account. Based on the audiotape, the defendant is articulate and of at least average intellect, and Investigator Busch and Special Agent Ferreira maintained a professional and respectful tone throughout the interrogation. The Miranda rights were individually read to the defendant aloud at least twice before the defendant stated he was willing to waive his rights, and the defendant asked questions about those rights and the consequences of his waiver before he agreed to provide a statement. No one promised anything or threatened the defendant to secure his consent to respond to questions.

The defendant's statement was not the product of coercion in violation of the Fifth Amendment. Before the interrogation began, the defendant voluntarily, knowingly, and intelligently waived his right to remain silent and to have counsel present during questioning.

IT THEREFORE HEREBY IS RECOMMENDED to the Honorable Richard G. Kopf, United States District Judge, pursuant to 28 U.S.C. §636(b)(1)(B), that the defendant's motion to suppress, filing no. 26, be granted pursuant to Edwards v. Arizona, 451 U.S. 477, 484 (1981), but defendant's claim that his statement was involuntary and the product of coercion be denied.

The parties are notified that a failure to object to this recommendation in accordance with the local rules of practice may be held to be a waiver of any right to appeal the district judge's adoption of this recommendation.

DATED this 26th day of May, 2009.

BY THE COURT:

s/ David L. Piester
David L. Piester
United States Magistrate Judge